UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA,

                                        MEMORANDUM & ORDER
                                        15-CR-620

       -against-

RICHARD ALLEN,

                        Defendant.

------------------------------------------------------------x

GLASSER, Senior United States District Judge:

       On December 3, 2015, a grand jury returned a two-count indictment that charges defendant Richard Allen ("Defendant" or "Allen") with receipt and possession of child pornography. ECF 14. On July 21, 2017, Allen moved to suppress all evidentiary fruits of the government's search of his computer, which search Allen alleges violated the Fourth Amendment, the Federal Magistrates Act (28 U.S.C. § 636(a)), and Rule 41 of the Federal Rules of Criminal Procedure. ECF 35 ("Def. Br."). In the alternative, Allen asked the Court to hold a *Franks* hearing "to determine whether the agent signing the warrant misrepresented the probable cause supporting the warrant to the issuing magistrate." *Id.* at 1 n.1. Because the Court concludes that the good faith exception to the exclusionary rule applies, Defendant's motion is denied.

## BACKGROUND

       In January 2015, pursuant to a warrant not at issue here, FBI agents seized control of "Playpen," a child-pornography website. ECF 35-1 ("NIT Warrant Application") ¶ 28. Playpen operated on the internet network known as "Tor," the key feature of which is that it maintains users' anonymity by masking their computers' Internet Protocol ("IP") addresses. *See id.* ¶¶ 7-9. To identify the administrators and users of Playpen, the FBI obtained a search warrant (the "NIT

1

Warrant") authorizing them to use a network investigative technique ("NIT"). Specifically, the NIT Warrant authorized the FBI to augment the Playpen website such that, when a user logged into Playpen by entering a username and password, the user's computer would be sent computer instructions; once downloaded, those computer instructions—which make up the NIT—would cause the user's computer (the "activating" computer) to send identifying information, including the activating computer's IP address, to a government-controlled computer. *See id.* ¶ 46, Attachs. A-B; ECF 35-2 ("NIT Warrant"). The NIT Warrant provided that that the NIT would be deployed on the computer server in the Eastern District of Virginia on which the government was operating Playpen, NIT Warrant, Attach. A, but as indicated in the warrant application, the activating computers could be located anywhere, *see* NIT Warrant Application ¶ 46. The NIT Warrant was issued by a magistrate judge in the Eastern District of Virginia. *See* NIT Warrant at 1. Armed with the NIT Warrant, the FBI deployed the NIT on Playpen for a two-week period, between February 20, 2015 and March 4, 2015. Def. Br. at 2 (citing ECF 1 ("Compl.") ¶¶ 3-9).

Through use of the NIT, the FBI learned the IP address of the computer being used by a Playpen user with the user name "alexandroalek2." Compl. ¶¶ 26-27. The IP address in question belonged to Optimum Online, and through an administrative subpoena to Optimum, the FBI learned that the IP address was associated with a residence in Brooklyn—Defendant's residence. *See id.* ¶¶ 32-34. In July 2015, the FBI obtained and executed a warrant (the "Brooklyn Warrant") to search the premises of that residence in Brooklyn. *Id.* ¶ 33. During the search of the residence, the FBI seized an external hard drive that contained hundreds of images and videos of child pornography. *Id.* ¶ 35. Defendant was present during the search of his residence, and upon being advised of its basis, he confessed to having accessed Playpen; confirmed his username,

"alexandroalek2"; and admitted that he had downloaded child pornography to an external hard drive. *Id.* ¶ 34. Defendant was indicted on December 3, 2015. ECF 14.

## DISCUSSION

The NIT Warrant at issue in this case has led to scores of prosecutions across the country. In over sixty cases, defendants have filed motions to suppress on substantially identical grounds as did Defendant here. *See* ECF 41 at 9-11 & nn.4-6 (collecting cases). Courts have issued dozens of decisions regarding the validity of the NIT Warrant and the applicability, if any, of the exclusionary rule, and those decisions fall into three categories:

> [1] Several courts have determined that the NIT Warrant violated Rule 41(b), or assumed without deciding that the warrant violated Rule 41(b), but, nonetheless, concluded that suppression was not warranted. [2] Other courts have determined that the NIT Warrant did not violate Rule 41(b) because it is a "tracking device" authorized by Rule 41(b)(4), but even if that were not the case, suppression is not warranted. [3] Finally, a few courts have concluded that the NIT Warrant violated Rule 41(b), and ordered suppression as a remedy.

*United States* v. *Austin*, 230 F. Supp. 3d 828, 832-33 (M.D. Tenn. 2017) (collecting cases) (internal citations omitted); *see also United States* v. *Dzwonczyk*, No. 4:15-CR-3134, 2016 WL 7428390, at *4 (D. Neb. Dec. 23, 2016) (describing same state of the litigation). The few courts that have ordered suppression as a remedy have all been reversed or overruled.[1]

---

[1] *See United States* v. *Carlson*, No. 16-CR-317, 2017 WL 1535995 (D. Minn. Mar. 23, 2017) (magistrate's report and recommendation), *overruled by United States* v. *Carlson*, No. 16-317 (D. Minn. Aug. 7, 2017); *United States* v. *Croghan* (and *Horton*) (consolidated order), Nos. 15-CR-48, 15-CR-51, 2016 WL 4992105 (S.D. Iowa Sept. 19, 2016), *rev'd*, *United States* v. *Horton*, 863 F.3d 1041 (8th Cir. 2017); *United States* v. *Workman*, No. 15-CR-397, 2016 WL 5791209 (D. Colo. Sept. 6, 2016), *rev'd*, 863 F.3d 1313 (10th Cir. 2017); *United States* v. *Arterbury*, No. 15-CR-182 (N.D. Okla. May 17, 2016), *holding overruled by Workman*, 863 F.3d 1313; *United States* v. *Levin*, No. 15-CR-10271, 2016 WL 2596010 (D. Mass. May 5, 2016), *rev'd*, 874 F.3d 316 (1st Cir. 2017).

3

In this case, Allen makes the same arguments that have been made by defendants across the country in other NIT Warrant cases.[2] In support of his motion to suppress, Defendant does not argue that either the NIT Warrant or the Brooklyn Warrant was deficient as to probable cause or particularity. Instead, Defendant's motion is grounded in his contention that the NIT Warrant did not comply with Rule 41 of the Federal Rules of Criminal Procedure.[3] Rule 41 provides that "a magistrate judge with authority in the district . . . has authority to issue a warrant to search for and seize a person or property *located within the district*." Fed. R. Crim. P. 41(b)(1) (emphasis added). Defendant argues that the NIT effectively searched his computer, which was located in Brooklyn—i.e., not "within the district." *See* Def. Br. at 4-5. Thus, according to Defendant, the NIT Warrant violated Rule 41 because it purported to authorize the search of property outside the Eastern District of Virginia. *See id.* at 6-10. Defendant argues that (i) the Rule 41 violation rendered the NIT Warrant void *ab initio*—because the magistrate judge did not have the authority to issue it—and thus the resulting search unconstitutional; (ii) all the evidentiary fruits of the NIT Warrant—including all of the evidence obtained pursuant to the subsequent Brooklyn Warrant—should therefore be suppressed; and (iii) no good faith exception applies. *See id.* at 10-15.

The government responds by arguing that (i) the NIT Warrant complied with Rule 41 because the NIT was a tracking device, which under Rule 41(b)(4) may "track the movement of a

---

[2] Indeed, Allen's briefs are substantially identical to those submitted by the defendant in the recently decided *United States* v. *Kim*, No 16-CR-191, 2017 WL 5256753 (E.D.N.Y. Nov. 10, 2017). Allen and Kim share the same lawyer.

[3] Defendant argues that the NIT Warrant also violated the Federal Magistrates Act, specifically 28 U.S.C. § 636(a). Def. Br. at 1. Section 636(a), which addresses a magistrate judge's jurisdiction, provides that a magistrate judge "shall have . . . all powers and duties conferred or imposed upon United States commissioners by law *or by the Rules of Criminal Procedure of the United States District Court*." 28 U.S.C. § 636(a)(1) (emphasis added). The § 636(a) argument thus turns entirely on whether the magistrate judge exceeded his authority under Rule 41. *See United States* v. *Kim*, No. 16-CR-191, 2017 WL 5256753, at *4-5 n.7 (E.D.N.Y. Nov. 10, 2017).

person or property located *within the district, outside the district, or both*," provided it is installed within the district, *see* ECF 41 ("Gov. Br.") at 11-18; (ii) even if the NIT Warrant violated Rule 41, the violation was a technical deficiency, not a constitutional infirmity, and therefore suppression is not warranted because Defendant cannot show that he was prejudiced or that the FBI intentionally and deliberately disregarded the Rule, *see id.* at 18-25; and (iii) even if the NIT Warrant was void *ab initio* and thus the resulting search unconstitutional, the good faith exception to the exclusionary rule applies, precluding suppression of evidence, because the FBI agents acted in objectively reasonable reliance on the NIT Warrant, *see id.* at 26-27. The government also argues that public policy favors denial of the motion. *See id.* at 27-28.

To decide this motion, the Court need not resolve whether the NIT Warrant violated Rule 41, an issue on which courts have split. Nearly fifty courts—including the First, Eighth, and Tenth Circuits and the one court in this District to have considered this issue—have denied motions to suppress evidence obtained from the NIT Warrant on the independently dispositive ground that, even if the NIT Warrant was void *ab initio*, the good faith exception to the exclusionary rule applies. *See United States* v. *Kim*, No. 16-CR-191, 2017 WL 5256753, at *6-7 & n.9 (E.D.N.Y. Nov. 10, 2017) (collecting cases); Gov. Br. at 9 & n.5 (same). Assuming *arguendo* that the NIT Warrant was void *ab initio*, the Court joins this chorus of courts in concluding that the good faith exception applies, and Defendant's motion is denied on that basis. The Court also denies Allen's requested alternative relief—a *Franks* hearing to determine whether the FBI misrepresented the basis for probable cause in applying for the NIT Warrant—because Defendant has not made the requisite showing that (i) the affidavit filed in support of the NIT warrant contained a knowingly or recklessly false statement and (ii) such false statement was necessary to the finding of probable cause.

5

## I. The Good Faith Exception to the Exclusionary Rule Applies

The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Notably, the Amendment "contains no provision expressly precluding the use of evidence obtained in violation" of its terms. *United States* v. *Leon*, 468 U.S. 897, 906 (1984). The exclusionary rule developed as "a 'prudential' remedy, crafted by the Supreme Court." *United States* v. *Raymonda*, 780 F.3d 105, 117 (2d Cir. 2015). The rule is neither a "personal constitutional right" nor a means "to 'redress the injury' occasioned by an unconstitutional search." *Davis* v. *United States*, 564 U.S. 229, 237 (2009)). Rather, "[t]he rule's sole purpose . . . is to deter future Fourth Amendment violations." *Id.* Crucially, "the exclusionary rule is designed to deter *police* misconduct," not mistakes by judges and magistrates. *Leon*, 468 U.S. at 916.

Moreover, "[b]ecause the remedy exacts a heavy toll on the justice system . . . the exclusionary rule does not apply whenever suppressing evidence 'might provide marginal deterrence.'" *Raymonda*, 780 F.3d at 117 (quoting *Herring* v. *United States*, 555 U.S. 135, 141 (2009)). "The rule's corrective value justifies its cost when the police 'exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights.'" *Id.* (quoting *United States* v. *Stokes*, 733 F.3d 438, 443 (2d Cir. 2013)). The countervailing considerations at play were described eloquently by then-Judge Cardozo, in *People* v. *Defore*, as follows:

> No doubt the protection of the statute would be greater from the point of view of the individual whose privacy had been invaded if the government were required to ignore what it had learned through the invasion. The question is whether protection for the individual would not be gained at a disproportionate loss of protection for society. On the one side is the social need that crime shall be repressed. On the other, the social need that law shall not be flouted by the insolence of office.

6

242 N.Y. 13, 24-25 (1926) (Cardozo, J.). In essence, the value of the corrective rule is diminished when the value of deterrence is exceeded by society's need for protection.

In assessing the exclusionary rule's deterrent purpose, the Supreme Court has recognized society's need by crafting a good faith exception to the rule's application. By its terms, evidence will not be suppressed "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," *United States* v. *Leon*, 468 U.S. 897, 920 (1984), even if the warrant is subsequently found to have been invalid. The good faith inquiry is confined to "the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." *Herring*, 555 U.S. at 145 (citation and internal quotation marks omitted). Defendants seeking to invoke the exclusionary rule face a "high obstacle" due to "the rule's costly toll upon truth-seeking and law enforcement objectives." *Id.* at 141 (quoting *Penn. Bd. of Probation and Parole* v. *Scott*, 524 U.S. 357, 364-65 (1998)). Nonetheless, the Supreme Court has identified at least four circumstances where the good faith exception does not apply:

(1) where the issuing magistrate has been knowingly misled;

(2) where the issuing magistrate wholly abandoned his or her judicial role;

(3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and

(4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*United States* v. *Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (citing *Leon*, 468 U.S. at 922-23).

Here, Allen attempts to end-run *Leon* by arguing that the good faith exception ***cannot*** apply where a search warrant is "void *ab initio*." Def. Br. at 10-11. This argument has been considered and rejected by three circuit courts—the First, Eighth, and Tenth—and more than forty district courts, including the one court in this District to have considered the issue. *See Kim*, 2017 WL

7

5256753, at *3 & n.9 (collecting cases). The argument makes little logical sense in view of the fact that "the 'basic insight of the *Leon* line of cases'"—"that exclusion should be limited to cases of 'deliberate, reckless, or grossly negligent disregard of Fourth Amendment rights'"—"applies equally to searches conducted with or without a warrant." *Raymonda*, 780 F.3d at 118 n.5 (quoting *Davis*, 564 U.S. at 238). Why should the good faith exception apply to a warrantless search but not to a search conducted pursuant to a warrant that, unbeknownst to law enforcement, was void *ab initio*? Defendant asserts that a "subsequently invalidated warrant," like the one at issue in *Leon*, is "qualitatively different" than a warrant that is void *ab initio*, ECF 47 ("Def. Reply") at 6, but he does not say why, nor does he explain why that difference is material to the deterrence calculus of the exclusionary rule.

Like the defendant in *Kim*, Allen's "argument that the issuance of the NIT Warrant in violation of Rule 41(b) rendered the warrant void *ab initio* and thus unconstitutional rests entirely on an unsupported and outdated reading of dicta from the Second Circuit's decision in *United States* v. *Burke*, 517 F.2d 377 (2d. Cir. 1975)." *Kim*, 2017 WL 5256753, at *4. Judge Chen persuasively deconstructed and dismissed the *Burke* argument in *Kim*, and it would be a thinly veiled exercise in plagiarism to repackage her reasoning here. Instead, the Court reproduces it in full:

> In *Burke*, the defendant challenged the government's seizure of a shotgun pursuant to a search warrant, claiming that the warrant's failure to comply with certain requirements of Rule 41 rendered it invalid and warranted suppression. The Second Circuit, however, rejected this argument, finding that the violations of Rule 41 were "not of sufficient consequence to justify use of the exclusionary rule." 517 F.2d at 385.
>
> In discussing the "relatively little case law on the question [of] how far the failure of a warrant to conform to provisions of Rule 41 other than those concerned with the constitutional requirements of probable cause and particularity of description will trigger the exclusionary rule," Judge Henry Friendly examined *Navarro* v. *United States*, 400 F.2d 315 (5th Cir. 1968), *overruled by United States* v. *McKeever*, 905 F.2d 829 (5th Cir. 1990), a Fifth Circuit case in which a search

8

warrant was issued by a state court judge who was not authorized to do so under Rule 41. *Burke*, 517 F.2d at 385. There, Judge Friendly explained, the exclusionary rule was applied because the defect in the warrant was "basic", such that "there was in effect no warrant at all for federal purposes." *Id.* at 385-86. Judge Friendly contrasted *Navarro* with cases where the courts declined to exclude evidence based on violations of Rule 41. *See id.* (citing *United States* v. *Ravich*, 421 F.2d 1196, 1201-02 (2d Cir.), *cert. denied*, 400 U.S. 834 (1970) (evidence seized during nighttime search not excluded where warrant omitted authority to search at night); *United States* v. *Soriano*, 482 F.2d 469, 478-79 (5th Cir. 1973), *modified en banc on other grounds*, 497 F.2d 147 (5th Cir. 1974) (refusing to exclude evidence where warrant failed to state name of executing agent)). Judge Friendly then reiterated the Second Circuit's caution that, because the exclusionary rule is "a blunt instrument, conferring an altogether disproportionate reward not so much in the interest of the defendant as in that of society at large[,] . . . courts should be wary in extending the exclusionary rule in search and seizure cases to violations which are not of constitutional magnitude." *Id.* at 386 (citation and internal quotation marks omitted). Judge Friendly concluded with:

> Without assuming to make a definitive formulation, we think that, except in a case like *Navarro* where, if the court was right in holding that Rule 41 applied, the defect made what was done in effect an unconstitutional warrantless search, violations of Rule 41 alone should not lead to exclusion unless (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.

*Id.* at 386-87.

It is this dicta from *Burke* that Kim seizes upon to argue that the NIT Warrant was void *ab initio* and unconstitutional because the issuing judge exceeded the geographical scope of Rule 41. The Court disagrees for several reasons. First, *Burke* expressly states that this language from the decision does not "make a definitive formulation" or rule. *Burke*, 517 F.2d at 386. Second, even if *Burke* can be interpreted as endorsing *Navarro*—which has since been overruled—and equating the "invalidity" of a warrant with unconstitutionality that requires exclusion, neither *Burke* nor *Navarro* provides guidance on the situation presented here, *i.e.*, a warrant issued by a federal magistrate judge based on probable cause, but exceeding the geographical limitation imposed by Rule 41. Third, to the extent that *Burke* established a mandatory suppression rule for constitutional Rule 41 violations, that rule is no longer controlling, in light of the Supreme Court's decisions in *Leon* and its progeny. In *Leon*, the Supreme Court, in effect, rejected *Burke*'s bright-line distinction between "basic" and non-"basic" defects in a warrant for purposes of deciding whether the exclusionary rule must be applied, finding that "[w]hether the exclusionary sanction is appropriately imposed in a particular case, our decisions make clear, is 'an issue separate from the question

9

> whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'" *Leon*, 468 U.S. at 906 (quoting *Illinois* v. *Gates*, 462 U.S. 213, 223 (1983)); *see also Horton*, 863 F.3d at 1050 ("The government argues that this distinction between 'voidable' and 'void' warrants is untenable in the good-faith exception context, and we agree."); *Lough*, 221 F. Supp. 3d at 783 n.12 ("This view also makes more sense when looking at the Supreme Court decisions. For example, justifying exclusion when a warrant is void *ab initio*, but inclusion when a warrant is non-existent, as in *Herring*, would require some semantic gymnastics."). Indeed, as the Second Circuit has recognized since *Leon*, a Fourth Amendment violation "does not necessarily result in the application of the exclusionary rule," *Rosa*, 626 F.3d at 64, and the good faith exception can be applied where there is no warrant at all, *Raymonda*, 780 F.3d at 118 n.5.

*Id.* at *4 (footnote omitted). Accordingly, the good faith exception **can** apply in a case where a search warrant was void *ab initio* because it violated Rule 41. *See id.* at *5.

Turning now to whether the good faith exception **should** apply in this case, the Court concludes that it should. The FBI "acted with good faith 'by diligently gathering information before submitting a detailed affidavit that fully apprised the issuing magistrate judge of all aspects of the NIT process, including the fact that the server for [Playpen] would, at all times, be located in the Eastern District of Virginia, while the activating computers may be located outside the district.'" *Kim*, 2017 WL 5256753, at *5 (quoting *United States* v. *Sullivan*, 229 F. Supp. 3d 647, 658 (N.D. Ohio 2017)). Moreover, the FBI acted within the scope of the NIT Warrant, a fact Defendant does not dispute, and none of the four exceptions to the good faith exception (identified in *Leon* and outlined above) apply.

Defendant puts forward two reasons why the Court should find that the government did not act in good faith, but neither is persuasive. First, Defendant argues that "the officers knew or should have known that a Rule 41 warrant issued by a Virginia magistrate judge cannot authorize a search in New York." ECF 47 ("Def. Reply") at 7. But Defendant provides "no evidence that any failure by the FBI to understand the intricacies of the jurisdiction of federal magistrates was deliberate." *United States* v. *Darby*, 190 F. Supp. 3d 520, 538 (E.D. Va. 2016). Moreover, the

10

FBI's ostensible belief that the Virginia magistrate judge had the authority to issue the NIT Warrant cannot be said to be unreasonable when in fact a number of courts have concluded that the magistrate judge *did* have the authority to do so. *See Dzwonczyk*, 2016 WL 7428390, at *14 ("[T]he divergence in judicial opinions on this issue provides sufficient evidence that, at a minimum, the magistrate judge's authority was not 'clear' to law enforcement for purposes of the good faith exception."). The FBI accurately described the NIT in the warrant application— including the fact that the NIT would reach activating computers "wherever located"—and reasonably relied on the magistrate judge's conclusion that she had the authority to issue the NIT Warrant. "To the extent that a mistake was made in issuing the warrant, it was made by the magistrate judge, not by the executing officers." *Levin*, 874 F.3d at 323.

Second, Defendant argues that the government did not act in good faith because it "was aware that the NIT could not be authorized to operate out of state under the prior version of Rule 41," as evidenced by the fact that the Department of Justice lobbied for the amendment to the Rule that now specifically authorizes the type of warrant at issue here.[4] Def. Reply at 7. This argument does not withstand scrutiny either. "[T]he question is not what the government collectively knew" but "what the individual law enforcement officers that submitted the warrant in this case knew." *United States* v. *Eure*, No. 2:16-CR-43, 2016 WL 4059663, at *9 (E.D. Va. July 28, 2016); *see*

---

[4] Rule 41(b), as amended effective December 1, 2016, now provides as follows:

> (6) a magistrate judge with authority in any district where activities related to a crime may have occurred has authority to issue a warrant to use remote access to search electronic storage media and to seize or copy electronically stored information located within or outside that district if:
>
> (A) the district where the media or information is located has been concealed through technological means; . . . .

Fed. R. Crim. P. 41(b)(6)(A).

*also Darby*, 190 F. Supp. 3d at 537 ("Defendant seeks to attribute to the FBI agents that sought the warrant the legal expertise of the DOJ lawyers, which is absurd."). Here, the FBI agent who submitted the affidavit in support of the NIT Warrant has credibly testified, in another NIT Warrant case, that "prior to submitting the warrant affidavit, he was not aware that courts had denied similar warrant requests" or "that the DOJ was lobbying to expand the scope of the magistrate judge's authority under Rule 41(b)." *United States* v. *Gaver*, No. 3:16-CR-88, 2017 WL 1134814, at *10 (S.D. Ohio Mar. 27, 2017). Indeed, "there is no evidence of record to support a finding that the FBI agents who executed the NIT Warrant had any knowledge of the proposed amendment to Rule 41(b) such that their actions related to the NIT Warrant may be considered bad faith." *United States* v. *Caswell*, No. 2:16-CR-134, 2017 WL 3600940, at *9 (M.D. Fla. July 11, 2017), *report and recommendation adopted*, No. 2:16-CR-134, 2017 WL 3583535 (M.D. Fla. Aug. 18, 2017). Moreover, even if the FBI agents *had* been aware of the proposed amendment, "'an awareness that Rule 41 was subject to amendment merely demonstrates recognized ambiguities in the Rule, not that [the government] acted with deliberate disregard for the rule.'" *Kim*, 2017 WL 5256753, at *6 (quoting *United States* v. *Vortman*, No. 16-CR-00210-TEH-1, 2016 WL 7324987, at *12 (N.D. Cal. Dec. 16, 2016)).

In sum, Defendant's arguments against application of the good faith exception are unpersuasive. The Court concludes that the FBI's "reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant . . . [was] objectively reasonable," *Leon*, 468 U.S. at 922, and, therefore, that the good faith exception applies. On this basis, the Court denies Defendant's motion to suppress.[5]

---

[5] The Court also denies Defendant's request for an evidentiary hearing as to whether the FBI intentionally and deliberately disregarded Rule 41(b). Def. Br. at 15. Where, as here, law enforcement relied on a warrant issued by a neutral magistrate, a court need not hold an

## II. Defendant's Request for a *Franks* Hearing Is Denied

To obtain a *Franks* hearing, a defendant must make a "substantial preliminary showing" that (i) the affidavit upon which a search warrant was granted contained a false statement made knowingly and intentionally or with a reckless disregard for the truth; and (ii) the allegedly false statement was "necessary to the finding of probable cause." *Franks* v. *Delaware*, 438 U.S. 154, 155-56 (1978). The "substantial preliminary showing" is no illusory requirement, as the Supreme Court made clear in *Franks*:

> There is . . . a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Id.* at 171.

Here, Allen has plainly failed to make the requisite preliminary showing that would mandate a *Franks* hearing. To begin with, the *Franks* request is confined to a two-sentence footnote, Def. Br. at 1 n.1, and the allegation of falsity stands unsupported by any affidavit, the absence of which is unexplained. Defendant's conclusory statement that "the FBI knew or should

---

evidentiary hearing to assess the law-enforcement officers' good faith unless "'the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause.'" *United States* v. *Ortiz*, 499 F. Supp. 2d 224, 229 (E.D.N.Y. 2007) (quoting *Franks* v. *Delaware*, 438 U.S. 154, 155-56 (1978)). In other words, the only evidentiary hearing that might be required in these circumstances is a *Franks* hearing, and even then only if the defendant has made the requisite "substantial preliminary showing." Allen did not style this request as a request for a *Franks* hearing, and he assuredly has not made the preliminary showing that would entitle him to one.

have known that Playpen's homepage no longer displayed child pornography at the time the NIT warrant was issued, and failed to convey that fact to [the magistrate judge]"[6] does not amount to a substantial preliminary showing that the affidavit upon which the NIT warrant was granted contained a false statement made knowingly and intentionally or with a reckless disregard for the truth. The request for a *Franks* hearing could be denied on this basis alone.

An additional, independent reason to deny the *Franks* hearing is that the allegedly false statement in the affidavit was not necessary to the finding of probable cause. Like the defendant in *Kim*, Allen "does not explain how the change in the Playpen homepage would have made a material difference with respect to the probable cause determination for the NIT Warrant." *Kim*, 2017 WL 5256753, at *7. And as other courts have found, regarding the change to Playpen's homepage, "the 'logo change from two sexually suggestive minors to only one minor, who was not dressed as provocatively, but still posed in a sexual manner, does not significantly impact the

---

[6] One would not know from Defendant's submissions how exactly Playpen's homepage changed, but the change was described in another of the many cases dealing with this exact same warrant:

> Paragraph 12 of [FBI Special Agent] Macfarlane's February 20, 2015, affidavit describes the homepage of the Play Pen website as follows: "On the main page of the site, located to either side of the site name were two images depicting partially clothed prepubescent females with their legs spread apart." At the hearing, Macfarlane testified that this was the logo that appeared every time he viewed the homepage from September of 2014 through February 18, 2015. He did not access the site again between February 18, 2015, and February 20, 2015, when he submitted the warrant application.
>
> It is undisputed that, sometime in that two-day period, the logo was changed. On February 20, 2015, the homepage showed just one girl, perhaps slightly older than the girls previously depicted, wearing a short dress, fishnet stockings and posed in a sexually suggestive manner. Although one of the other agents may have signed onto the website on February 19, 2015, and observed this change, no one told Macfarlane about it.

*Gaver*, 2017 WL 1134814, at *5 (internal citations omitted).

probable cause determination.'" *Id.* (quoting *United States* v. *Allen*, No. 3:15-CR-221, Dkt. 106, slip. op. at 17 (D. Conn. Mar. 30, 2017)); *see also Gaver*, No. 3:16-CR-88, 2017 WL 1134814, at *6 ("[I]n the Court's view, the old logo and the new logo are not materially different); *Darby*, 190 F. Supp. 3d at 531 (concluding that the alleged falsity in the affidavit was not material under *Franks*); *United States* v. *Matish*, 193 F. Supp. 3d 585, 606 (E.D. Va. 2016) (finding "that the logo change was not material to the probable cause determination").

## CONCLUSION

Defendant here chose the medium that enabled him to obtain child pornography. That medium was the internet, which he confidently believed he could use anonymously. The motion to suppress implies that he did not know—or consciously avoided knowing—that the same medium, the internet, might be used by the FBI to dispel his belief. The motion to suppress, in essence, is a request to immunize Defendant—a knowledgeable, sophisticated user of the internet—from criminal responsibility. The request is denied, for the reasons discussed above.[7]

---

[7] Given the amendment to Rule 41 and the Court's conclusion that the good faith exception applies, the question of whether the NIT Warrant violated Rule 41 is essentially academic. But the underlying issue—the adaptability of Rule 41, and of the Federal Rules generally, to advances in technology—is a recurring one, and for this reason the Court feels compelled to add that it does not believe the NIT Warrant violated Rule 41, let alone the Fourth Amendment. True, the NIT here was not specifically authorized by the version of Rule 41(b) in effect at the time the NIT Warrant was issued. Yet neither were electronic intrusions specifically authorized by the Rule when the Supreme Court upheld a warrant for a pen register, in *United States* v. *New York Telephone Co.*, 434 U.S. 159, 168-69 (1977), nor was video surveillance specifically authorized when the Second, Ninth, and Seventh Circuits—following *New York Telephone*—held that the Rule authorizes warrants for video surveillance. *See United States* v. *Koyomejian*, 970 F.2d 536, 542 (9th Cir. 1992); *United States* v. *Biasucci*, 786 F.2d 504, 509-10 (2d Cir. 1986); *United States* v. *Torres*, 751 F.2d 875, 877-78 (7th Cir. 1984). These decisions teach us that Rule 41 should be interpreted flexibly—particularly in its application to new technology not contemplated by the Rule's drafters—to permit searches that comply with the Fourth Amendment. *See United States* v. *Jones*, 230 F. Supp. 3d 819, 824 (S.D. Ohio 2017) ("Rule 41 has been found flexible enough to accommodate advancements in technology not envisioned when the rule was promulgated.").

Guided by this principle, the Court has no difficulty in concluding that the NIT Warrant was authorized by the "tracking device" provision of Rule 41(b). (At least seventeen district court and

SO ORDERED.

Dated: Brooklyn, New York
December 13, 2017

/s/
I. Leo Glasser

---

magistrate judges have reached the same conclusion. *See* Gov. Br. at 9 & n.4 (collecting cases).) Rule 41(b)(4) provides that a magistrate judge may issue a warrant for a "tracking device" that "authorize[s] use of the device to track the movement of a person or property located within the district, outside the district, or both," provided the device is installed within the district. Fed. R. Crim. P. 41(b)(4). "Tracking device" is defined, for purposes of Rule 41, as "an electronic or mechanical device which permits the tracking of a person or object," and the definition of "property" includes "information." Fed. R. Crim. P. 41(a)(2)(A), (E); 18 U.S.C. § 3117. The NIT authorized by the NIT Warrant maps neatly onto this framework. It qualifies as a "tracking device" under the Rule "because it is an investigative tool consisting of computer code transmitted electronically over the internet." *United States* v. *Jean*, 207 F. Supp. 3d 920, 942 (W.D. Ark. 2016). Moreover, the NIT was installed on the government server in Virginia ("within the district") on which the FBI was hosting Playpen, and from there it tracked information—the child pornography downloaded from the site by users—back to those users' computers; once on the users' computers, the NIT then sent location-identifying information to the FBI. The NIT was thus functionally equivalent to a tracking device—and so comfortably within the flexible bounds of Rule 41(b)(4).

Finally, in considering Rule 41's application to the NIT technology at issue here, the Court is also mindful of another apt Justice Cardozo observation: "Consequences cannot alter statutes, but may help to fix their meaning. Statutes must be so construed, if possible, that absurdity and mischief may be avoided." *Matter of Rouss*, 221 N.Y. 81, 91 (1927) (Cardozo, J.). It would be absurd indeed if Rule 41 were interpreted to preclude issuance of the NIT Warrant solely on the grounds that the Playpen users' computers were not all within the Eastern District of Virginia. For one thing, Rule 41(b)'s animating purpose—"protect[ing] individuals from being subjected to the powers of distant government officials," *Darby*, 190 F. Supp. 3d at 537—holds little force where, as here, those subject to the warrant's reach were so subject only because they affirmatively reached into the Eastern District of Virginia. More importantly, the reason the NIT needed to be deployed in the first place was that, due to Playpen users' use of anonymizing Tor software, the FBI had no way of knowing in advance where they were located; the FBI therefore could not have obtained warrants in each Playpen user's district before deploying the NIT. The consequence of Defendant's preferred, rigid interpretation Rule 41(b) would thus be the conclusion that—notwithstanding the existence of probable cause and particularly described places to be searched and property to be seized—the FBI could not have obtained a Rule 41-compliant NIT Warrant. The drafters of Rule 41 surely could not have intended such a result, and this Court will not countenance it.